United States District Court
Southern District of Texas
**ENTERED**
July 05, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| TONJA M. BRONSON, § | |
| § | |
| Plaintiff. § | |
| § | |
| V. § | CIVIL ACTION NO. 3:22-cv-00313 |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |

## OPINION AND ORDER

Plaintiff Tonja M. Bronson ("Bronson") seeks judicial review of an administrative decision denying her applications for disability insurance benefits under Title II of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Bronson and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 10, 13. After reviewing the briefing, the record, and the applicable law, Bronson's motion for summary judgment (Dkt. 10) is **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 13) is **GRANTED**.

## BACKGROUND

On February 8, 2020, Bronson filed an application for Title II disability insurance benefits, alleging disability beginning on August 1, 2013, and continuing to a date last insured of December 31, 2019. Her applications were denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that Bronson was not disabled. Bronson filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Bronson had not engaged in substantial gainful activity through December 31, 2019, the date last insured. *See* Dkt. 7-3 at 21.

The ALJ found at Step 2 that Bronson suffered from "the following severe impairments: diabetes mellitus, diabetic neuropathy, hypertension, gastroesophageal reflux disease (GERD), obstructive sleep apnea, gastroparesis, diverticulosis/irritable bowel syndrome, recurrent hemorrhoids, and obesity." *Id.* at 22.

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments. *See id.*

Prior to consideration of Step 4, the ALJ determined Bronson's RFC as follows:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she could occasionally climb ramps and stairs, but should have never climbed ladders, ropes, and scaffolds. She could occasionally, balance, stoop, kneel, crouch, and crawl. She should have avoided concentrated exposure to dangerous moving machinery, unprotected heights, and wet, slippery, or uneven surfaces. She could frequently handle and finger bilaterally. She could occasionally push, pull operate foot controls bilaterally.

*Id.* at 23.

At Step 4, the ALJ found that Bronson "was capable of performing past relevant work as a bank teller as generally performed." *Id.* at 25. Accordingly, the ALJ found Bronson not disabled. *Id.* at 25–27.

## DISCUSSION

This social security appeal involves only one issue: whether substantial evidence supports the ALJ's determination that Bronson was not disabled prior to the expiration of her date last insured.[1] Specifically, Bronson contends that the "ALJ's RFC is unsupported by substantial evidence because it is unsupported by any medical opinion" and because the "ALJ determined [Bronson]'s RFC by relying on her lay interpretations of [Bronson]'s medical conditions and determined [Bronson]'s functional limitations based on nothing more than raw medical data." Dkt. 10-1 at 5. I disagree.

Bronson is correct that there is no medical opinion in the record.[2] But "[t]he absence of such a statement, however, does not, in itself, make the record incomplete. In a situation such as the present one, where no medical statement has been provided, [the] inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). "Cases upholding decisions despite a lack of medical or other expert opinions are usually cases with little or no evidence of a significant impairment." *Whalen v. Kijakazi*, No. 3:21-CV-24, 2022 WL 3333487, at *4 (N.D. Miss. Aug. 11, 2022). This is such a case.

The only evidence of Bronson's impairments during the period under adjudication are the diagnoses in her medical records—literally, the words "diabetic neuropathy" and "gastroparesis." There is simply no evidence in the record, other than Bronson's own testimony, to support that her diabetic neuropathy and gastroparesis affected her ability to work during the period under

---

[1] "A claimant is eligible for benefits only if the onset of the qualifying medical impairment [or combination of impairments] began on or before the date the claimant was last insured." *Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000). Medical evidence subsequent to the date last insured is relevant only to the extent that it may "'bear upon the severity of the claimant's condition before the expiration of his or her insured status.'" *Luckey v. Astrue*, 458 F. App'x 322, 326 (5th Cir. 2011) (quoting *Loza*, 219 F.3d at 394).

[2] The state agency reviewers determined there was insufficient evidence regarding Bronson's conditions and thus offered no opinions regarding Bronson's limitations.

adjudication (and that testimony is undercut by Bronson's activities of daily living, as I explain below). As the ALJ noted, "[p]hysical examination findings showed no sensory deficits, [Bronson] had 5/5 strength in all extremities, deep tendon reflexes were 2+, and her gait was normal." Dkt. 7-3 at 24. This is "medical evidence where the extent of functional loss and its effects on job performance would be apparent even to a lay person," meaning that the ALJ could make a common-sense judgment about Bronson's functional capacity. *Whalen*, 2022 WL 3333487, at *5 (quotation omitted).

Bronson's reliance on *Ripley* and *Whalen* is misplaced. In *Ripley*, there was "a vast amount of medical evidence establishing that Ripley ha[d] a problem with his back." *Ripley*, 67 F.3d at 557. Here, there is no evidence whatsoever during the relevant period that Bronson's neuropathy and gastrointestinal issues impaired her functionality.[3] Similarly, in *Whalen*, "medical records show[ed that] Whalen had consistent complaints of pain and limited range of motion in his upper extremities." *Whalen*, 2022 WL 3333487, at *6. Here, however, the ALJ noted that "physical examination findings throughout the period under adjudication were unremarkable. [Bronson] had a steady gait, normal range of motion, and full strength throughout." Dkt. 7-3 at 24.

Moreover, in *Whalen*, the claimant's testimony was "the only non-medical evidence." 2022 WL 3333487, at *7. Here, the ALJ had other non-medical evidence—Bronson's "activities of daily living"—to look to in determining that the "evidence does not support the alleged disability." Dkt. 7-3 at 25. Specifically, the ALJ relied on the fact that Bronson "drives her kids to school, attends school functions, and cares for her 72-year-old mother, taking her to the doctor and

---

[3] To the extent that Bronson's fecal incontinence is evidence of significant impairment, it was not noted for the first time until November 13, 2020, nearly a year after Bronson's date last insured. *Compare* Dkt. 7-17 at 5 (noting that Bronson has "uncontrolled loose stools as well as fecal incontinence" on November 13, 2020), *with* Dkt. 7-14 at 29 (denying incontinence of stool as late as April 1, 2019). Thus, Bronson's fecal incontinence does not "bear upon the severity of the [Bronson]'s condition before the expiration of . . . her insured status." *Luckey*, 458 F. App'x at 326 (quotation omitted).

preparing meals," in addition to taking a cruise, "walking and dancing for exercise," and working as "an Uber driver in addition to a housewife." *Id.* Thus, Bronson is incorrect to suggest that the ALJ relied "on nothing more than raw medical data" in determining Bronson's RFC. Dkt. 10-1 at 5. The ALJ discounted "[Bronson]'s statements about the intensity, persistence, and limiting effects of her symptoms [as] inconsistent with the objective medical evidence and other [non-medical] evidence." Dkt. 7-3 at 24.

Bronson argues that "[s]pending a short amount of time driving during the day—which involves no standing, walking, or lifting/carrying—is not substantial evidence showing that Plaintiff can stand or walk for 6 hours of an 8-hour workday or lift 20 pounds at a time" (Dkt. 10-1 at 8), which are the requirements for light exertional work. *See* 20 C.F.R. § 404.1567(b). But Bronson overlooks that, under the "sequential evaluation process," it was *her* burden to *first* demonstrate that an "impairment prevents h[er] from performing h[er] past work." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."). The only evidence in the record that Bronson's impairments limited her in any way was Bronson's own testimony, which the ALJ discounted as inconsistent with Bronson's activities of daily living. Accordingly, the ALJ's decision is supported by substantial evidence.

## CONCLUSION

For the reasons provided above, Bronson's motion for summary judgment (Dkt. 10) is **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 13) is **GRANTED**. I will enter a final judgment separately.

SIGNED this 5th day of July 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE